**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

CLARENCE OTWORTH,

        Plaintiff,

     vs.

WILLIAMS, HUGHES & COOK, PLLC,
a corporation, and HAROLD F. CLOSZ, III,
SHON A. COOK, SUSAN M. FRANKLIN,
Individuals,

        Defendants.

File No. 1:11-cv-206

Hon. Gordon J. Quist
United States District Judge

_____/

Clarence M. Otworth, *In Propria Persona*
187 E. Daniels Road
Twin Lake, MI 49457
Telephone:  231-292-1065

Theodore N. Williams, Jr. (P32291)
Eric C. Grimm (P58990)
Attorneys for All Defendants
120 West Apple Avenue; P.O. Box 599
Muskegon, MI 49443-0599
Telephone:  231-726-4857
Fax:  231-727-2130
E-mail:  tedwilliams@whcspc.com

_____/

**MEMORANDUM IN OPPOSITION TO PLAINTIFF CLARENCE OTWORTH'S**
**MOTION TO DISQUALIFY DEFENDANTS' COUNSEL**

      NOW COME ALL DEFENDANTS, and respectfully oppose the motion filed by the

Plaintiff titled "Motion to Set Aside Attorney Appearance of Theodore N. Williams, Jr. & Eric

C. Grimm."  See Doc. Ent. 14.[1]  In essence, Plaintiff seeks to disqualify the professional counsel

_____

[1]All Defendants expressly reserve the right, if necessary, to file one or more motions to
dismiss, pursuant to Rule 12(b) of the FEDERAL RULES OF CIVIL PROCEDURE.  The deadline for
such filings, unless changed or modified by Order of this honorable Court, would be May 9,
2011.  See Doc. Ent. 7, 8, 10.  The filing of this opposition memorandum does not constitute a
                                             (continued...)

selected by Plaintiff's litigation opponents.  In doing so, Plaintiff transparently seeks to secure a perceived tactical advantage.  Plaintiff cites no authority whatsoever to support his demand for disqualification.  Instead he argues, "there is no precedent for such nonsense."

Simply put, Plaintiff's argument is best understood in a somewhat ironic sense – for, indeed, there exists <u>no precedent whatsoever</u> for Plaintiff's own nonsense.   On the other hand, at both the state and the federal level, a well-developed body of law actually <u>does</u> exist, governing issues of disqualification – particularly when such a motion is brought by a litigant against the attorneys representing the other side.   <u>See</u> pages 14-19, *infra*.   Application of this well-established body of law requires that Plaintiff's disqualification motion, be **DENIED**.  <u>Id</u>.

## <u>MEET CLARENCE OTWORTH</u>

Clarence Otworth is presently a resident of the Village of Lakewood Club.  Lakewood Club is located in the northwest corner of Dalton Township, Muskegon County, Michigan – with Blue Lake Township to the immediate north, and Fruitland Township to the immediate west.

Otworth evidently is upset about paying his property taxes (among other things).  This is hardly the first time that Otworth has gone to court over issues relating to paying his taxes.  <u>See Otworth v. Southern Pacific Transp. Co.</u>, 166 Cal. App. 3d 452; 212 Cal. Rptr. 743 (Cal. Ct. App., 2nd Dist. 1985) (Exhibit 2).  In order to make certain that we have the same person as the Clarence Matthew Otworth who filed the <u>Southern Pacific</u> appeal, we asked Otworth for confirmation.  He has confirmed in writing that, indeed, he was the appellant in the California case.  The observations of the California court would appear to have at least some salience, here:

> Here, Otworth bases his arguments on "virtually every imaginable timeworn challenge to the federal income tax withholding system."

---

[1](...continued)
waiver of any Defendant's rights to seek dismissal under Rule 12.

(Edgar v. Inland Steel Co., [744 F.2d 1276, 1278 (7th Cir. 1985)])
These include (1) that withholding is an illegal taking without due
process of law, (2) that he is not an "employee" subject to taxation,
(3) that wages are not income, (4) that federal reserve notes are not
money, and (5) that the 16th Amendment does not permit the taxing
of individuals. "Every court that has considered any of these
claims has found them to be without merit." (Id., at pp. 1278-1279,
fn. 4.) (See United States v. Stillhammer (10th Cir. 1983) 706 F.2d
1072; United States v. Richards (8th Cir. 1983) 723 F.2d 646;
United States v. Burton (E.D. Tex. 1983) 575 F. Supp. 1320; Jones
v. United States (N.D.N.Y. 1982) 551 F. Supp. 578.) No
reasonable person could in good faith believe this action to have
any merit whatsoever. No matter how characterized, this action in
reality is a meritless challenge to the Federal Income Tax laws,
taken to frustrate the lawful collection of the internal revenue.
"'[A]busers of the tax system have no license to make
irresponsible demands on the Courts of Appeals to consider
fanciful arguments put forward in bad faith.'" (Edgar v. Inland
Steel Co., *supra*, . . . at p. 1278.) For these reasons, we grant
Southern Pacific's request for costs and attorney's fees.

Otworth v. Southern Pacific, 166 Cal. App. 3d, at 461; 212 Cal. Rptr., at 478-79 (Exhibit 1).

Other adventures by Otworth in the court system[2] include (but are not limited to) Otworth
v. Southern Pacific Transp. Co., No. 85-5928, 791 F.2d 167 (9th Cir. May 20, 1986) (Table,
unpublished decision), *cert. denied*, 479 U.S. 887 (1986); Otworth v. The Florida Bar, 71 F.
Supp. 2d 1209 (M.D. Fla. 1999), and Otworth v. Ramsey, C.A. No. 1:00-cv-02023-CAM (N.D.
Ga. *filed* Aug. 7, 2000). The Florida Bar case involved an unsuccessful effort by Otworth to
collect a reward offered by publisher Larry Flynt[3] for information leading to the arrest and

---

[2]Mr. Otworth graciously has confirmed in writing that these, too, are his lawsuits.

[3]Cf. Hustler Magazine, Inc. v. Falwell, 485 U.S. 46 (1988), for background on Flynt.

conviction of the "true" assassin of President John F. Kennedy. Similarly, in the Ramsey case, Otworth contended that he was entitled to a substantial financial reward that had been offered in relation to the highly-publicized JonBenét Ramsey murder investigation.

Returning to the subject of state property taxes in Michigan, it turns out that Michigan has a procedure and a forum for the adjudication of property tax disputes. See MCL 205.701-205.779 ("Michigan Tax Tribunal Act"); see also < http://www.michigan.gov/taxtrib >. Additionally, if taxes go unpaid and real property becomes subject to tax forfeiture, then there exists a further opportunity in state circuit court, see MCL 211.78k(2)(a) - (2)(f), to raise certain issues similar to those that Mr. Otworth would appear to want to litigate.

However, Mr. Otworth did not avail himself of available procedures in the Michigan Tax Tribunal, or any other procedures authorized by the Legislature. Instead, he elected to try to invent his own procedure in the 60th District Court. We can understand why he might desire to invent his own procedure, because the MTT procedures make it quite a challenge, if not impossible, to raise issues related to tax years other than the current tax year.

But the mere desire to re-open every tax year back to 1967, does not confer upon Mr. Otworth, any legal entitlement to do so. See generally Connine v. Smith, 190 Mich. 631; 157 N.W. 450 (1916) (collecting cases) (recognizing "general principle" that "acts of a municipal corporation may not be resisted by showing the irregularity of its organization"); Bird v. Perkins, 33 Mich. 28; 1875 WL 6480 (1875) (Cooley, J) (rejecting taxpayer's municipal tax dispute, in which taxpayer sought to invalidate taxes based on irregularities in municipality's formation).

Nor does Otworth's mere desire to confer subject-matter jurisdiction upon the 60th District Court, somehow trump the Michigan Legislature's decision to assign subject-matter jurisdiction to the Michigan Tax Tribunal. Most importantly, Otworth's subjective desire to

appoint himself judge and arbiter, of the question whether the Village of Lakewood Club is a Michigan municipality, does not make him judge, or diminish the actual authority of the officials properly assigned this solemn responsibility.  See Connine, 190 Mich. 631; 157 N.W. 450; see also Detroit Edison Co. v. East China Twp. Sch. Dist. No. 3, 366 Mich. 638; 115 N.W.2d 298 (1962).  To be clear, this case does not require any decision about the Village's existence.  Id.

## THE STATE COURT PROCEEDING

As acknowledged by his pleadings, Otworth lost in the 60th District Court.  Not surprisingly, the 60th District Court, Hon. Harold F. Closz, III, presiding, concluded that subject-matter jurisdiction belonged to the Tax Tribunal, and not to the state district court.[4]  The state trial court also awarded sanctions, which certainly was within its jurisdiction to do.  Willy v. Coastal Corp., 503 U.S. 131, 137-39 (1992); see also Chambers v. NASCO, Inc., 501 U.S. 32, 42-46 (1991) (inherent power also supports sanctions jurisdiction); Maldonado v. Ford Motor Co., 476 Mich. 372, 376; 719 N.W.2d 809 (2006) (Michigan courts have inherent sanctions authority).  By the very act of signing a pleading, see MCR 4.001; MCR 2.114(D), Otworth necessarily subjected himself to the sanctions jurisdiction of the 60th District Court.

Rather than filing an appeal from the state court's decision (for which appeal, Otworth certainly knew the filing deadline), Otworth instead elected to mount a collateral attack in federal court, upon the state-court judgment – claiming that he had been denied "due process." Of course, the requirements of due process are simply fair notice and an opportunity to be heard – i.e., notice "reasonably calculated, under all the circumstances, to apprise interested parties of

---

[4]There is no question, however, that the 60th District Court **had jurisdiction to rule upon the threshold question of whether subject-matter jurisdiction existed**.  Chicot Cty. Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 377 (1940) ("The court has the authority to pass upon its own jurisdiction and its decree . . . while open to direct review, is res judicata in a collateral action."); Sewell v. Clearing Mach. Corp., 419 Mich. 56, 63; 347 N.W.2d 447 (1984) ("The court must have jurisdiction to decide the matter of its own jurisdiction.").

the pendency of the action and afford them an opportunity to present their objections." Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950); see also Cleveland Bd. of Ed. v. Loudermill, 470 U.S. 532, 542 (1985) (due process requires "notice and opportunity for hearing appropriate to the nature of the case"). A collateral civil rights lawsuit (such as this one), seeking money damages out of a judge's own pocket for issuing a decision that a litigant personally disapproves, is subject to dismissal even if the judge was vindictive, capricious, or wrong (though Judge Closz, in this case, was none of those things).[5] Stump v. Sparkman, 435 U.S. 349, 356-57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'").[6] Otworth certainly is not, and never has been, entitled (by due process, or otherwise), to a decision that he personally approves. Id. Nor has he ever been entitled (by due process, or otherwise) to a hearing on the merits in a different forum than the one assigned subject-matter jurisdiction by the Michigan Legislature (in this case, the Michigan Tax Tribunal).[7]

---

[5]For what it is worth, we respectfully suggest that Otworth's Complaint is subject to dismissal in its entirety, even if every allegation that he has made is assumed to be true. That said, we also have secured a transcript of the hearing about which Otworth makes allegations, and based on that transcript we reasonably believe that Mr. Otworth either had difficulty hearing what was actually happening, or has inaccurately remembered what actually occurred.

[6]We expect that Otworth will be inclined to agree, selectively, with Judge Closz on the issue of whether the 60th District Court had subject-matter jurisdiction to rule on the merits of Otworth's state-court litigation. What Otworth fails to realize and understand, is that the 60th District Court **clearly had** jurisdiction to rule on the threshold question of subject-matter jurisdiction, and also had jurisdiction to order sanctions. Thus, necessarily, the "clear absence of all jurisdiction" criterion is not met, and Judge Closz is entitled to immunity from suit.

[7]Otworth, in federal court, also broadly seeks to attack the Village's power even to enact a zoning ordinance – which probably would not be an issue for the Tax Tribunal (or, for the 60th District Court, had the issue arisen, there). However, we agree with Magistrate Judge Carmody that zoning-related questions would not present an issue to be addressed by a federal district

(continued...)

Moreover, under the time-honored *Rooker-Feldman* doctrine, federal courts lack subject-matter jurisdiction to entertain such collateral attacks on state-court judgments. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). Accordingly, Magistrate Judge Carmody already has issued a Report and Recommendation, proposing that Otworth's federal lawsuit be dismissed. See Doc. Ent. 12. If Otworth disagreed with the state court decision, then his remedy was by exercising his right of appeal, and he admits that he voluntarily elected to forego that option.

The underlying thesis behind Otworth's state-court litigation (as well as Otworth's federal lawsuit), perhaps not surprisingly, involves a conspiracy theory. In Otworth's view, sometime in June, 1967, the then-members of the Muskegon County Board of Supervisors hatched a conspiracy with then-members of the Dalton Township Board of Supervisors, to form the Village of Lakewood Club, using a procedure that Otworth personally believes was not then

---

[7](...continued)
court, in the first instance, either. See Williamson County Regional Planning Com'n v. Hamilton Bank of Johnson City, 473 U.S. 172, 186-91 (1985); Miles Christi Religious Order v. Township of Northville, 629 F.3d 533, 537-38 (6th Cir. 2010); Murphy v. New Milford Zoning Comm'n, 402 F.3d 342, 348 (2nd Cir. 2005) ("Requiring a property owner to obtain a final, definitive position from zoning authorities evinces the judiciary's appreciation that land use disputes are uniquely matters of local concern more aptly suited for local resolution."). Moreover, insofar as the application of zoning laws to Otworth, remains a matter of concern for him, some interesting questions of *res judicata* may well apply. See Otworth v. Village of Lakewood Club, No. 1:01-cv-281 (W.D. Mich. Aug. 7, 2002) (Doc. Ent. 94), *aff'd*, 59 Fed. Appx. 785; 2003 WL 1194308 (6th Cir. Mar. 11, 2003), *cert. denied*, 540 U.S. 1021 (Nov 17, 2003) (No. 03-6374); see also Otworth v. VanderPloeg, No. 1:01-cv-635 (W.D. Mich. Aug. 8, 2002) (Doc. Ent. 68), *aff'd*, 61 Fed. Appx. 163; 2003 WL 1465399 (6th Cir. Mar 19, 2003), *cert. denied*, 540 U.S. 1021 (Nov. 17, 2003) (No. 03-6375). Finally, it is worth noting that Otworth has not named the Village as a defendant, and therefore we do not believe that any zoning-related issues have properly been brought before this honorable Court, in this action. We simply do not see how any of the named defendants can be sued for money damages based on any theory that the Village's passage of a zoning ordinance, allegedly causes Clarence Otworth personally to experience strong emotions. See VanderPloeg, *supra* (addressing similar problems with prior Otworth litigation).

authorized by Michigan law.[8]  Otworth, of course, completely fails to identify any particular <u>illegal</u> or tortious objective, that might hypothetically have prompted the 1967 formation of such a hypothetical conspiracy.  See Beck v. Prupis, 529 U.S. 494, 501-02 (2000) ("There is no tort of civil conspiracy in and of itself.  There must first be pleaded specific wrongful acts which might constitute an independent tort.") (citations omitted).  The objective of incorporating a village would appear to be perfectly legal, and the end-result, in the public interest.[9]

Moreover, the members of the 1967 County and Township Boards, also appear to have been acting in a legislative capacity – which reasonably leads to questions about Otworth's individual liability analysis (he is, after all, naming individuals, not any municipality, as defendants), and whether Otworth's approach is consistent, or inconsistent, with settled law.  See MCL 691.1407(5) (enacted in 1964) (local elected officials immune when acting in legislative capacity); see also Smith v. Jefferson County Bd. of School Comm'rs, No. 06-6533, __ F.3d __, 2011 WL 475186, at *15-*16 (6th Cir. Feb. 11, 2011) (discussing legislative immunity).

The Defendants, for purposes of the pending disqualification motion, do not take any position – one way or the other – on the subject of whether any conspiracy existed in 1967.  However, we will respectfully note that the allegations set forth in Otworth's Amended

---

[8]Otworth appears to be confused about his categories.  His central point appears to involve the text of two statutes, each addressing certain issues relating to the procedure for incorporating of villages, in Michigan.  See generally MICH. CONST. 1963, Art. VII, § 21 ("The legislature shall provide by general laws for the incorporation of cities and villages.").  Inexplicably, in Otworth's mind, the adjectives "unconstitutional" and "criminal" also apply – but we fail to see how Otworth makes either of these two inferential leaps, when the Legislature enjoys essentially plenary power, see id., to establish procedures for the incorporation of villages, and Otworth's central gripe involves whether the statutory procedures were followed.

[9]Certainly, Otworth neither alleges nor offers any evidence that anyone in 1967, shared his reading of Michigan law, on the subject of the incorporation of villages – or actually viewed the 1967 resolution, at the time it was signed, as *ultra vires*.  He only alleges that this issue initially arose in 2001 – in other words, after more than thirty (30) years of reliance on the 1967 incorporation event, by public officials and residents, alike.

Complaint, do not appear to meet the minimum requirements of the FEDERAL RULES OF CIVIL PROCEDURE, for an adequate statement of a claim upon which relief can be granted.[10]  See, e.g., Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 554-56 (2007) (in relation to antitrust conspiracies, addressing minimum pleading requirements, to survive dismissal); Beck, 529 U.S., at 501-02.  Moreover, although Otworth's Amended Complaint makes a passing reference to the Racketeer Influenced and Corrupt Organizations Act ("RICO"), on its face Otworth's amended pleading does not appear to meet the specificity requirements, recognized by the Sixth Circuit, adequately to plead a RICO cause of action.[11]  See, e.g., Dana Corp. v. Blue Cross & Blue Shield Mut. of Northern Ohio, 900 F.2d 882 (6th Cir. 1990) (RICO claims, based on predicate allegations of fraud, must meet "heightened pleading" requirements of FED. R. CIV. P. 9(b)).

Likewise, in order to address Otworth's disqualification motion, Defendants need not take any position – one way or the other – as to whether the legally-correct village formation procedure was followed in 1967.[12]  Accordingly, Defendants take no position, either way.

_____

[10]Moreover, even if a conspiracy in 1967 (more than **forty (40)** years ago) had adequately been pleaded, still Otworth would have no basis to overcome the applicable statute of limitations, e.g. MCL 600.5813 (residual limitations period for Michigan civil cases is six years), or the equitable doctrine of laches.  See also Rotella v. Wood, 528 U.S. 549 (2000) (limitations period for RICO claim, is four years).

[11]The applicable four-year limitations period still serves as an absolute bar to such claims, even if Otworth gets his pleadings in order.  Rotella v. Wood, 528 U.S. 549, 554 (2000).  Even assuming that Mr. Otworth did not "discover" what he now claims constitutes a fraudulent RICO conspiracy until long after 1967 – still, he certainly admits that, as of 2001, he fully knew that tax bills were being mailed out by the Village of Lakewood Club.  He also admits knowing that he had paid property taxes – which is what he subjectively perceives to inflict an "injury" upon him.  Thus, the time to sue (at the latest), would have been prior to September, 2005.  Id.  It is now 2011.  Any RICO claims are necessarily barred by the applicable limitations period.  Id.

[12]However, we will take a position as to whether this issue is in any way legally relevant or material either to any issues before this honorable Court, or any before the 60th District Court.  Based on long-settled legal principles, the alleged 1967 irregularity in municipality formation, over which Otworth principally appears to be worked-up, is not relevant or germane, and simply
(continued...)

What all the named Defendants (who all got sued in 2011) categorically deny is having anything at all, personally, to do with any alleged 1967 conspiracy, or with any events even remotely related to the 1967 formation of the Village of Lakewood Club.  Village Attorney Shon Cook, in June 1967, had not yet even been conceived, let alone born.  Cook, later born in Iowa, would eventually graduate from Creighton University Law School in 1994, before moving to Muskegon County.  She did not become Lakewood Club's corporate counsel, until approximately 2003.  Susan Franklin would not be born until 1977.  She relocated to Muskegon County after law school and a clerkship, in 2006.  Harold F. Closz, III, in June 1967, had just graduated from high school and was spending the summer working in the Core Room of Plant III, of the Campbell, Wyant & Cannon foundry, in Muskegon, prior to entering college that fall.  At that time, Closz had not served in any public office.  The Williams, Hughes & Cook, law firm had not been formed in 1967, and would not be formed for more than thirty (30) years, thereafter.  Indeed, the building where the firm presently is located, had not even been constructed.  As for the defendant named in the state court proceeding, Village Treasurer Lisa Swanson – in June, 1967, Swanson still was several years away from being conceived, let alone being born.  Swanson was not born until 1974.

Thus, even assuming the hypothetical existence of a conspiracy in 1967, which Otworth has not even bothered adequately to allege, still, none of Otworth's current individual targets in 2011, could possibly have had anything to do with it.  Otworth's theory makes no sense.

A theory based on a purported 1967 conspiracy presents other problems, too – several of which are properly raised at the pleadings stage.  Presumably, anyone who might have had any

---

[12](...continued)
does not matter.  Connine, 190 Mich. 631; 157 N.W. 450; Bird, 33 Mich. 28; 1875 WL 6480.

objection to the incorporation procedure in 1967 – or in the years shortly thereafter,[13] see MCL 600.5813 (Michigan's residual statute of limitations period, for civil cases, is six years) – had every opportunity either to make their concerns known to Michigan's Attorney General,[14] or to seek some sort of relief or remedy on their own initiative. The intervening passage of more than forty (40) years, from 1967 to the present, therefore, would appear rather significant.

Otworth's approach also conveniently ignores the reality that in the absence of the 1967 incorporation of the Village, property taxes still would have been paid (and would continue to be paid) – in roughly the same amounts as with a village. Presumably, the county and school district portions of each tax bill, would have been identical. Dalton Township, rather than the Village, would be collecting some modest amount of taxes. But the amount of each year's bill would not be significantly different. Otworth's view that the "remedy" for an alleged 40-year-old irregularity in the incorporation procedure for a municipality, must necessarily involve the unwinding of every subsequent governmental action or ordinance, in addition to the refund of all the intervening taxes, appears to be grounded more in wishful thinking than in practicality or precedent. See Connine, 190 Mich. 631; 157 N.W. 450 (recognizing "general principle" that "acts of a municipal corporation may not be resisted by showing the irregularity of its organization"); Bird, 33 Mich. 28; 1875 WL 6480 (rejecting taxpayer's municipal tax dispute, in which taxpayer sought to invalidate taxes based on irregularities in municipality's formation).

---

[13]But see Wills v. Iron County Bd. of Canvassers, 183 Mich. App. 797; 455 N.W.2d 405 (Mich. App. 1990) (Limitations period may be as short as thirty (30) days, in relation to certain quo warranto actions).

[14]See Risk v. Lincoln Charter Twp. Bd. of Trustees, 279 Mich. App. 389, 392 n.2; 760 N.W.2d 510 (Mich. App. 2008) ("A private citizen must generally show that the Attorney General has refused to institute quo warranto proceedings before that citizen may individually pursue a traditional quo warranto action.").

If Otworth had properly "teed-up" his conspiracy theory – for instance, by fulfilling the statutory prerequisites for filing a challenge to his 2008 or 2009 property taxes with the Tax Tribunal – then the Tax Tribunal might very well have been presented with an interesting question. The <u>Connine</u> and <u>Bird</u> decisions give us a pretty good idea how such a case might have been resolved, if Otworth had followed the correct procedures. But, ultimately, Otworth elected instead to invent his own procedure in the 60th District Court, and Otworth lost due to lack of subject-matter jurisdiction. Precisely because Otworth has elected not to pursue any appellate remedies in state court, the judgment of the 60th District Court is final, and its determination on the issue of subject-matter jurisdiction, is conclusive, for purposes of this collateral litigation. <u>Chicot Cty. Drainage Dist. v. Baxter State Bank</u>, 308 U.S. 371, 377 (1940).

So, is it possible to sue any of the named Defendants – in 2011 – in federal court, based on Otworth's conspiracy theory? We seriously doubt it. Judge Closz, in particular, is entitled to absolute judicial immunity. <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978).

The other defendants all are entitled to raise a number of defenses (and will do so, if and when it becomes necessary to file a Rule 12(b)(1) and 12(b)(6) motion to dismiss, <u>see</u> note 1, *supra*) – qualified immunity; the litigation privilege; the absence of any tort duty; quasi-judicial immunity of "persons other than judges without whom the judicial process could not function;" and the *Noerr-Pennington* doctrine, among them.

For now, we can focus on the issue of qualified immunity, which extends to Cook, Franklin, and the law firm, when acting in the capacity of counsel for a municipal entity, even if working for an hourly fee, rather than on the village payroll.[15] <u>Cullinan v. Abramson</u>, 128 F.3d

---

[15]We recognize that Magistrate Judge Scoville had a different perspective on certain related issues, when he issued his <u>VanderPloeg</u> decision. <u>See</u> note 7, *supra*. However, it does not appear he had the benefit of considering <u>Wyatt v. Cole</u>, 504 U.S. 158 (1992), and <u>Lugar v.</u>

(continued...)

301, 310 (6th Cir. 1997). The question simply is whether a fairly-debatable legal issue was present before the 60th District Court, on which reasonable minds can differ, either as to the jurisdiction of the Tax Tribunal, or the effect (if any) under Michigan law of a **forty-year-old** alleged irregularity in the process of incorporating a village. Under Anderson v. Creighton, 483 U.S. 635, 639 (1987), "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action[16] . . . assessed in light of the legal rules that were 'clearly established' at the time it was taken." Applying this test, it certainly is clear that the Village of Lakewood Club, Swanson, Cook, Franklin, and the law firm, all reasonably could rely on the Michgian Supreme Court decisions of Connine, Bird, and People v. Maynard, 15 Mich. 463, 470, 1867 WL 3333 (1867), as well as relying on other law, including prior decisions of this very Court. See note 7, *supra*. They also reasonably argued that tax issues belong before the Tax Tribunal, under Michigan law. Their position was, and always has been, objectively *reasonable*, under the circumstances. In contrast, Otworth, in order to overcome the defense of qualified immunity, would need to show that his position (namely, that an alleged 40-year-old irregularity

---

[15](...continued)
Edmondson Oil Co., 457 U.S. 922 (1982). We respectfully suggest that a categorical rule does not apply on the question of whether attorneys representing private litigants are (or are not) "state actors" for purposes of 42 U.S.C. § 1983 – but that a more nuanced, case-by-case analysis is required. However, for attorneys who are representing clients that are municipalities or municipal officials (either as "in house" attorneys, on the municipal payroll, or as "outside" counsel on an hourly basis), we believe and respectfully suggest that Cullinan properly holds that qualified immunity applies and may be raised as a defense by any such attorney.

[16]Here, the "action" of Cook, Franklin, and the WH&C law firm, would be the assertion of a good-faith, properly-researched, and **successful** legal defense, in a contested lawsuit, on behalf of Village Treasurer Lisa Swanson, a municipal client. Of course, even lawyers who lose their motions are entitled and expected to represent their clients zealously, with good-faith arguments on fairly debatable questions. But here, the success of the defense mounted by Cook, Franklin, and the firm, is all the more evidence that their good-faith analysis had genuine merit.

in the formation of a municipal entity, requires the unwinding of every action taken, or tax collected, by the municipality since its inception), was somehow "clearly established" in law – "[O]ur cases establish that the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant, sense: The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right."  <u>Anderson</u>, at 640.  Simply put, Otworth has not met – and simply cannot ever meet – that standard, which necessarily requires a consultation of pre-existing, published law.[17]  It is impossible for Otworth to overcome the qualified immunity defense, precisely because the published Michigan decisions – <u>Connine</u> and <u>Bird</u> (among others) are directly contrary to his personal and subjective wishes about what he would prefer the law to be. He also has been completely unable to make any valid or legitimate argument, on the issue of jurisdiction.  Therefore, Otworth must lose.

**DISQUALIFICATION OF COUNSEL**

With the above context in mind, we then turn to Otworth's disqualification motion.  The relevant facts are as follows.  Theodore N. Williams, Jr., has never had any attorney-client relationship with Clarence Otworth, and has never received any information, disclosed by Otworth in confidence.  The only communications between Williams and Otworth, have been

---

[17]We anticipate, of course, that Otworth will endeavor to trot out that old war-horse, and favorite of tax-protestors, <u>Norton v. Shelby County, Tn.</u>, 118 U.S. 425 (1886).  Suffice it to say that the <u>Norton</u> decision addresses a question of <u>Tennessee</u> law, not Michigan law, <u>e.g.</u>, <u>Edwards v. Allen</u>, 216 S.W.3d 278, 290 (Tenn. 2007) (specifically contrasting Tennessee's approach from that of Michigan), and in <u>Norton</u>, the U.S. Supreme Court was expressly deferential to the views of the Tennessee Supreme Court on questions of Tennessee law.  <u>See Norton</u>, at 441.  Such deference to state courts on matters of state law, incidentally, was not always the practice of federal courts prior to <u>Erie R.R. Co. v. Tompkins</u>, 304 U.S. 64 (1938).

The issue Otworth wants to address is unquestionably a <u>state</u> issue, not a federal issue, and the Michigan Supreme Court has spoken repeatedly on this exact same subject.  Citation to a pre-<u>Erie</u> federal decision, that expressly references Tennessee law, is not persuasive.  Moreover, Otworth's argument simply is not made in good faith because he knows he is not in Tennessee.

solely related to this litigation, and in an adversarial context. Likewise Eric C. Grimm, has never

had any attorney-client relationship with Clarence Otworth, has never received any confidential

communication or information from Otworth, and has previously dealt with Otworth only in an

adversarial context – on the opposite side of two lawsuits.

Williams serves as Corporate Counsel for the County of Muskegon, at the pleasure of the

County Board. See MCL 49.71 - 49.73. Among the responsibilities of corporate counsel is the

defense of county elected and other officials against civil lawsuits. Such defense is generally

undertaken in close consultation with the Michigan Municipal Risk Management Authority,

which provides various insurance and risk management services to the County.

Judges of the 60th District Court are among the elected officials who Williams (and,

hence, the firm of Williams, Hughes & Cook, PLLC), will be obligated to represent from time to

time. Eric C. Grimm is an employee of Williams, Hughes & Cook, who assists Williams in the

defense of such cases, including the defense of lawsuits against sitting judges.

It should hardly come as any surprise that Williams, Grimm, and the firm, undertook a

close and careful analysis of whether any conflict of interest (or even a positional conflict)

existed, among any of the Defendants named in this lawsuit, before undertaking the defense of

all Defendants. Moreover, each of the Defendants was properly consulted as part of the

decision-making process. We are not aware of any adversity of interests between or among any

of the Defendants. Indeed, all Defendants' interests obviously are aligned. Likewise, we firmly

believe that no positional conflict exists between or among any of the Defendants.

Certainly, there exists no rule or law prohibiting either an equity owner, or an employee,

of the Williams, Hughes & Cook, PLLC, law firm, from representing the firm itself, or lawyers

of the firm, as counsel in a lawsuit filed against the firm or its personnel. Grimm, at least, has

done the exact same thing before – without objection, question, or complaint by the court or opposing counsel. <u>See</u>, <u>e.g.</u>, <u>Thomas v. Hughes</u>, No. 1:10-cv-00329-PLM (W.D. Mi. *filed* Apr. 5, 2010, and *dismissed* June 28, 2010) (so, Otworth is simply wrong about "no precedent"). Williams and Grimm both intend to keep doing so in the future, when appropriate, Mr. Otworth's objections notwithstanding. We recognize, of course, the rule in Michigan, that "[a]n individual may appear *in propria persona*; a corporation, however, can appear only by attorney regardless of whether it is interested in its own corporate capacity or in a fiduciary capacity."[18] <u>Peters Production, Inc. v. Desnick Broadcasting Co.</u>, 171 Mich. App. 283; 429 N.W.2d 654 (Mich. App. 1988). But here, the WH&C firm *is* represented by attorneys licensed to practice in Michigan – two of them. There is no rule prohibiting a law firm from being represented by its own personnel; such representation is perfectly legal, so long as they are licensed to practice in this state and admitted to practice before this honorable Court. Williams and Grimm both are admitted to the State Bar of Michigan, and properly admitted to practice in this Court.

Otworth's efforts to disqualify Williams and Grimm, appear to be based on Otworth's perception that they are representing parties (the Defendants) whose interests are adverse to his own. To which we can only respond: **Of course** the Defendants' interests are adverse to those of Mr. Otworth! Otworth has sued them, and thus the Defendants, indeed, are on the opposite side of litigation from him. Otworth himself created the adversarial situation.

So long as a prior attorney-client relationship with Otworth does not exist, **there is absolutely nothing wrong** with Williams or Grimm representing one, or even all, of Otworth's litigation opponents. <u>See</u> <u>S.D. Warren Co. v. Duff-Norton</u>, 302 F. Supp. 2d 762, 766-74 (W.D. Mich. 2004) (Quist, J.) (recognizing that, *even if* a prior attorney-client relationship exists, it still

---

[18]In some jurisdictions, such a rule is subject to narrow exceptions. <u>See</u> <u>Shy v. Metro Passbook, Inc.</u>, 439 Mich. 855; 481 N.W.2d 351 (1992) (opinion of Levin, J.).

is not disqualifying, unless the two matters are "substantially related"). And, in this case, neither Williams nor Grimm has ever had any prior attorney-client relationship, whatsoever, with Otworth (let alone any such relationship in any "substantially related" matter).

The Sixth Circuit applies a three-part test for attorney disqualification: (1) a past attorney-client relationship existed between the party seeking disqualification and the attorney it seeks to disqualify; (2) the subject matter of those relationships was substantially related; and (3) the attorney acquired confidential information from the party seeking disqualification. Dana Corp. v. Blue Cross & Blue Shield Mut. of N. Ohio, 900 F.2d 882, 889 (6th Cir. 1990); accord S.D. Warren Co., 302 F. Supp. 2d, at 767. Michigan state courts apply a similar standard, based on Rules 1.7 and 1.9 of the Michigan Rules of Professional Conduct. E.g., Lamont Community Church v. Lamont Christian Reformed Church, 285 Mich. App. 602, 613-15; 777 N.W.2d 15 (Mich.App. 2009). Rule 1.7, concerning present client relationships, states:

    (a)    A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

        (1)    the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

        (2)    each client consents after consultation.

    (b)    A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:

        (1)    the lawyer reasonably believes the representation will not be adversely affected; and

        (2)    the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include explanation of the implications of the common representation and the advantages and risks involved.

Again, Rule 1.7 does not disqualify either Williams or Grimm, because they have always been on the opposite side of litigation from Otworth. See Friedman v. Dozorc, 412 Mich. 1, 27; 312 N.W.2d 585 (1981); Casey v. Auto Owners Ins. Co., 273 Mich. App. 388, 402-03; 729 N.W.2d 277 (Mich. App. 2006). As representatives of Otworth's chosen litigation opponents, Williams and Grimm owe no legal duties or loyalty to Otworth, whatsoever. Id.

Rule 1.9, concerning former clients, states:

(a)     A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

(b)     Unless the former client consents after consultation, a lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated has previously represented a client

(1)     whose interests are materially adverse to that person, and

(2)     about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(c) that is material to the matter.

(c)     A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:

(1)     use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or

(2)     reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Since Otworth has never been a former client of either Williams or Grimm, their law firm, or any former law firm, he cannot disqualify them. Id. The party seeking to disqualify opposing

counsel bears the burden of proving that opposing counsel should be disqualified. <u>S.D. Warren Co.</u>, 302 F. Supp. 2d, at 767; <u>accord</u> <u>MJK Family LLC v. Corporate Eagle Management Servs., Inc.</u>, 676 F. Supp. 2d 584 (E.D. Mich. 2009). Here, Otworth has completely failed to make any showing of any of the elements that he would need to establish, in order to secure the disqualification of opposing counsel.

Otworth's motion was filed in bad faith, and completely without either the fact investigation or the legal research that is required even of *pro se* litigants, under Rule 11(b)(2) and 11(b)(3) of the Federal Rules of Civil Procedure. <u>See</u> <u>Burnett v. Grattan</u>, 468 U.S. 42, 50 n.13 (1984) (emphasis added) (noting that "Federal Rule of Civil Procedure 11 emphasizes that an attorney **or *pro se* litigant** certifies that 'to the best of his knowledge, information, and belief **formed after reasonable inquiry**,'" all court filings are "'well grounded in fact and . . . warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and . . . not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.'"); <u>Danvers v. Danvers</u>, 959 F.2d 601, 604-05 (6th Cir. 1992); <u>see also</u> <u>Stevens v. Mooney</u>, No. 95-1757, 81 F.3d 161 (Table), 1996 WL 125048 (6th Cir. Mar. 20, 1996) ("*Pro se* litigants must comply with Rule 11 and make a reasonable inquiry as to whether a complaint is well-grounded in fact and warranted by existing law."). Not only did Otworth obviously fail to perform his reasonable inquiry obligation, but his disqualification motion also was unquestionably filed for multiple improper purposes – including harassment, and the needless increase of Defendants' litigation expenses.

Indeed, this entire proceeding initiated by Otworth unmistakably violates not only Rule 11, but also 28 U.S.C. § 1927, which also has been held to apply to *pro se* litigants. <u>See</u> <u>Blachy v. Butcher</u>, No. 03-2079, 129 Fed. Appx. 173 (6th Cir. 2005) (unpublished opinion, affirming

decision of Quist, J.); <u>Wood v. Santa Barbara Chamber of Commerce, Inc.,</u> 699 F.2d 484 (9th Cir. 1983).  Defendants, and counsel, are well-aware that a motion for sanctions, under Rule 11(c)(2), must comply with certain procedural requirements.  Defendants reserve the right to file such a motion, after following the required procedures.  However, Rule 11(c)(3), also authorizes this honorable Court, to issue a show-cause order on its own initiative.  We respectfully leave it for the Court itself to determine whether such a Court-initiated show-cause order against Otworth is appropriate and justified.

<b><u>CONCLUSION</u></b>

For the reasons set forth above, all Defendants respectfully pray that Otworth's motion (Doc. Ent. 14), be DENIED.  Defendants also respectfully pray for such other and further relief, as this honorable Court may deem just and proper.

Respectfully submitted,

Dated: March 31, 2011

/s/ Eric C. Grimm
Theodore N. Williams, Jr. (P32291)
Eric C. Grimm (P58990)
WILLIAMS, HUGHES & COOK, PLLC
120 West Apple Avenue
P.O. Box 599
Muskegon, MI  49443-0599
231.727.2111
Fax:  231.727.2130
E-mail: ecgrimm@whcfirm.com

COUNSEL FOR DEFENDANTS.

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing Memorandum in Opposition to Plaintiff Clarence Otworth's Motion to Disqualify Defendants' Counsel, was filed through the Court's ECF system, on March 31, 2011.  Because the following party is not participating in the ECF system, the Defendants' Memorandum in Opposition to Plaintiff Clarence Otworth's Motion to Disqualify Defendants' Counsel, is being served on him, by First Class Mail, postage prepaid, on March 31, 2011:

Clarence M. Otworth, *In Propria Persona*
187 E. Daniels Road
Twin Lake, MI 49457

Respectfully submitted,

 _/s/ Eric C. Grimm_____
Theodore N. Williams, Jr. (P32291)
Eric C. Grimm (P58990)
WILLIAMS, HUGHES & COOK, PLLC
120 West Apple Avenue; P.O. Box 599
Muskegon, MI  49443-0599
Telephone:  231-726-4857
Fax:  231-727-2130
E-mail: ecgrimm@whcfirm.com

COUNSEL FOR DEFENDANTS.